THE HAMPTON AND BRANCHVILLE R. R. AND LUMBER CO. v.
THE BANK OF CHARLESTON.

1. FINDING OF FACT reversed.
2. PLEADING—ISSUES—RELIEF.—A decree in this case requiring the plaintiff to issue to the defendant 200 shares of its capital stock is outside of the issues necessarily involved in the action.
3. STOCK—CHARTER—20 STAT., 829.—The charter of the N. L. I. & M. Co., 20 Stat., 829, authorizes it to hold stock in other corporations.
4. STOCK—CHARTER—NOTICE—20 STAT., 1171.—Under the charter of the H. & B. R. R. and L. Co. (20 Stat., 1171), a transferee of the stock of a subscriber to the capital stock takes it with constructive notice of all the limitations and restrictions attaching to the original subscriber.

Before WATTS, J., Charleston, February term, 1895.  Reversed.

Action by the Hampton and Branchville Railroad and Lumber Company against The Bank of Charleston, National Banking Association, for delivery to plaintiff of scrip for 200 shares of its capital stock.   Heard by the Court of three Justices, November term, 1895.

The following is the report of the master, G. H. Sass:

This case was referred to me by an order of the Court, filed 23d November, 1893, to take testimony and report upon the law and the facts, with leave to report any special matter.   I have held references, have been attended by the solicitors of the parties, and have taken testimony, which is hereto attached.   I find from the testimony the following facts: On May 15th, 1893, the Bank of Charleston, National Banking Association, discounted for the National Land Improvement and Manufacturing Company a collateral note, dated Charleston, S. C., May 13th, 1893, for $8,000, payable thirty days after date to J. H. Steinmeyer or order, with interest after maturity at the rate of eight per cent. per annum.   The note was secured by two scrips, Nos. 13 and 17, for 100 shares each of the stock of the Hampton and Branchville Railroad and Lumber Company, par value $100 each, which scrip was delivered to the bank with the

note duly endorsed, on May 15th, 1893. The certificates of stock are sealed with the company's seal, signed by Wm. H. Mauldin, president and treasurer, dated 2d January, 1893, numbered the one No. 13 and the other No. 17, and each certifies that the National Land Improvement and Manufacturing Company is entitled to 100 shares in the capital stock of the Hampton and Branchville Railroad and Lumber Company. The certificates are both endorsed by the company. The loan was negotiated by John C. Mallonee, the general manager and financial agent of the National Land Improvement and Manufacturing Company, with Gen. Siegling, the president of the Bank of Charleston. There was no qualification, limitation or restriction as to the pledge of the stock to the bank. No notice was given by Mr. Mallonee or any one else, so far as appears from the testimony, to the president or any of the officers of the bank of any agreement, written or otherwise, between the Hampton and Branchville Railroad and Lumber Company and the National Land Improvement and Manufacturing Company, nor did the bank have any notice of any lien or claim on the pledged stock by any person or persons whomsoever, nor was there any thing to put the bank upon inquiry in the matter. It was an ordinary discount of collateral paper in the regular course of business. The proceeds of the loan were placed to the credit of the National Land Improvement and Manufacturing Company upon the books of the Bank of Charleston, where the said company had an account, and were checked against at once by the company, and were applied to the taking up of other notes of the company not yet due, and to the release of other collaterals pledged to secure said notes. Upon this state of facts, I hold, as matter of law, that no matter what secret agreement may have existed between the Hampton and Branchville Railroad and Lumber Company and the National Land Improvement and Manufacturing Company with regard to the stock of the former company standing in the name of and being in the possession of the latter company,

the defendant, the Bank of Charleston, being an innocent holder for value without notice, cannot be affected by any such an agreement, and that the 200 shares of stock in the hands of the said defendant, under the facts of this case as found above, are held by the bank freed and discharged from any equities between the Hampton and Branchville Railroad and Lumber Company and the National Land Improvement and Manufacturing Company. And I recommend, therefore, that the complaint in this case be dismissed, and judgment entered for the defendant, and that the plaintiff be adjudged and decreed to transfer upon its books to the defendant the 200 shares of stock hereinbefore described.

The case came before Circuit Judge on exceptions, and he filed the following decree:

Upon reading the pleadings, and after hearing argument of Messrs. Lord & Burke, for plaintiff, and Charles Inglesby, for defendant, it is ordered, adjudged, and decreed, that the report of G. H. Sass, master, filed February 16th, 1895, be confirmed, and that plaintiff's exceptions thereto be overruled. It is further ordered, that the certificates of stock Nos. 13 and 17, for 100 shares each of the stock of the Hampton and Branchville Railroad and Lumber Company, of the par value of $100 each, dated January 2, 1893, issued by said company to the National Land Improvement and Manufacturing Company, pledged by said company as collateral to its note of May 13, 1893, for $8,000, payable thirty days after date to J. H. Steinmeyer or order, with interest after maturity at the rate of eight per cent. per annum, and endorsed by the said J. H. Steinmeyer to the defendant, in the ordinary and regular course of business, and without any notice of any lien or claim on the stock so pledged by the said plaintiff, or by any person or persons whomsoever, or of any agreement, written or otherwise, between the said plaintiff and the said National Land Improvement and Manufacturing Company, by reason of

which pledge it is adjudged that the defendant, the Bank of ·Charleston, N. B. A., is the innocent *bona fide* holder for value without notice of the said stock as collateral as aforesaid.   It is further ordered, adjudged, and decreed, that the said plaintiff do transfer upon its books to the said defendant the said 200 shares of stock;  and lastly, it is ordered, that the complaint herein be dismissed, and that the plaintiff, the said the Hampton and Branchville Railroad and Lumber Company, do pay the costs of this action.

From this decree the plaintiff appeal, on the following exceptions:

First.  That his Honor erred in overruling the plaintiff's exceptions to the master's report, and, on the contrary, should have sustained the same.   That in so ruling, his Honor agrees with the master in finding that the proceeds of the discounted note for $8,000 was applied to take up other notes of the National Land and Improvement Company not yet due, and the release of other collaterals; and that he should have found that the said proceeds were applied to take up other notes besides those of the National Land and Improvement Company, and among them a note of the Steinmeyer Lumber Company for $447.34, and a note of Mallonee & Co. for $2,000.

Second.  That his Honor erred in overruling the said exceptions, and thereby holding that the defendant held the 200 shares of stock in question, freed from the equities between the plaintiff and the National Land and Improvement Company, but should have found the contrary.

Third.  That his Honor erred in overruling the said exceptions, but should have sustained the third one of said exceptions, because, according to the equities between the plaintiff and the National Land and Improvement Company, the latter had no authority to pledge the 200 shares of stock, and said stock not being a negotiable security, the National Land and Improvement Company could not

convey to the bank any better title than the said company itself had.

Fourth. That his Honor erred in overruling the said exceptions, but should have sustained the fourth one of said exceptions, because the National Land and Improvement Company, being a corporation, had no right to hold stock in another corporation, of all of which the defendant had notice, and that defendant was aware that said National Land and Improvement Company had no right to hold or pledge said stock.

Fifth. That his Honor erred in overruling the said exceptions, but should have sustained the fifth one thereof, because he should have found that the $8,000 note was negotiated with defendant for the purpose of taking up notes, among them the note of the Steinmeyer Lumber Company for $447.34, and the note of Mallonee & Co. for $2,000; and the defendant was aware, or should have been aware, that the National Land and Improvement Company had no authority to pledge the 200 shares in question for that purpose, and so the said pledge was without authority for any purpose for which it was made.

Sixth. That his Honor erred in overruling the said exceptions, but should have sustained the sixth one thereof, because he should have held that the plaintiff was entitled to the relief demanded, for the reason that the pledge to defendant was without authority.

Seventh. That his Honor erred in overruling the said exceptions, but should have sustained the seventh one thereof, because at the furthest he could do no more than dismiss the complaint, and could give the defendant no affirmative relief in this cause.

Eighth. That his Honor erred in finding that the certificates of stock Nos. 13 and 17 were pledged and endorsed as stated in said decree, and in the ordinary and usual course of business, and without any notice of lien or claim on the stock so pledged by the said plaintiff or by any person or persons whomsoever, or of any agreement between the

plaintiff and the National Land and Improvement Company, but should have found the contrary.

Ninth. That his Honor erred in adjudging that the defendant is the innocent *bona fide* holder for value without notice of the said stock.

Tenth. That his Honor erred in ordering the plaintiff to transfer on its books to defendant the said 200 shares of stock, because such relief is affirmative and cannot be rendered on the pleadings in this case, and is inconsistent with the order dismissing the complaint.

Eleventh. That his Honor erred in dismissing the complaint, but should have sustained the same, because it appears from the testimony that the National Land and Improvement Company was not entitled to hold the said stock, and the defendant could occupy no better position in regard thereto than the said company itself.

*Messrs. Lord & Burke,* for appellant, cite: *Stock subject to equities of appellant:* 4 Rich. Eq., 113; 47 L. J., 168; 49 N. Y., 564. *Relief granted:* Code, 266; 25 N. Y., 613; 17 S. C., 43.

*Mr. W. T. Gary,* for appellant, cites: *Plea of purchaser for value without notice:* 55 Fed. Rep., 472; Rice, 174; 37 Col., 113; 20 Stat., 1169; 11 S. C., 510; 134 U. S., 401.

*Mr. Charles Inglesby,* contra, cites: *Estoppel:* 53 Hem., 52; 127 N. Y., 252. *Finding of fact:* 11 S. C., 29.

Jan. 6, 1897. The opinion of the Court was delivered by

MR. JUSTICE POPE. Both parties, plaintiff and defendant, are corporations, and the object of plaintiff's action is that the defendant may be adjudged to deliver to the plaintiff the 200 shares of the capital stock in such plaintiff corporation, which has been pledged to such defendant corporation illegally. The history of the whole matter, as briefly stated, is as follows: On the 3d day of January, 1893, the plaintiff, contemplating the completion of its railroad from

Hampton C. H. to Branchville, both points being located
in this State, deemed it necessary for this purpose that a
bonded indebtedness should be created to the extent of
$10,000 a mile from Hampton to Branchville.    An agree-
ment on that day was executed by the plaintiff of the first
part to and with the National Land Improvement and
Manufacturing Company (which latter was a corporation
created under the laws of this State) of the second part,
wherein it was provided: "The party of the first part agrees
to transfer $50,000 of the capital stock of the Hampton and
Branchville Railroad and Lumber Company, the capital
stock having been increased to $100,000, to the party of
the second part, and deliver to them for sale immediately
the first mortgage six per cent. bonds on all the road bed
and properties of the said company now acquired, or to be
acquired hereafter, on the proposed line of railroad from
Hampton, S. C., to Branchville, S. C., to the extent of
$10,000 per mile.    Such bonds to be immediately engraved
and gotten up in such style as the party of the second part
may direct, and as the party of the first part may approve,
and secured by a trust deed on all the property and fran-
chises now or hereafter to be acquired, as is usual in rail-
road mortgages.    (2) It is further agreed, that the party of
the first part will furnish the right of way, with specifica-
tions of the manner of construction, together with a profile
of the road, and such estimates and certificates as may be
necessary in filling the contract for and in the construction
of said road.    (3) That the party of the second part, in con-
sideration of the delivery to them of the securities above
named, agree to negotiate and dispose of the said bonds to
the best advantage possible, subject to a price to be ap-
proved by the party of the first part; and from the proceeds
of the said securities, to build and equip the railroad from
Hampton, S. C., to Branchville, S. C., in such manner and
under the specifications furnished by the engineer of the
party of the first part; the equipment to consist of locomo-
tives and cars and such other equipments as may be reason-

ably necessary for the proper conduct of the business.    (4) It is further agreed and stipulated, that the party of the second part proceed with the work as rapidly as possible, and consistent with the funds they may have in hand from the negotiations of the said bonds.    It is also agreed, that in the fulfillment of their contract, they shall have the use of that part of the road now laid, together with the equipment, and the right to exchange as much of the old rail and equipment for new as cannot be used to an advantage for sidings and other purposes.    (5) It is further agreed and stipulated by the respective parties, that in order that the party of the first part may make immediate extension of about six miles of their road, that the party of the second part agree to accept and pay drafts drawn at ninety days from time to time, as may be needed for the payment of materials, labor, and supplies, the gross amount of such advances not to exceed $25,000.    The said amount as advanced by the party of the second part to be paid back to said advancers by the sale of the aforesaid bonds, and in the absence of the sale of the said bonds, as contemplated by their agreement, then the said amount is to be paid by the party of the first part; and in the meantime the party of the second part shall hold the first mortgage bonds as aforesaid, as collateral security for said acceptances; and it is further agreed and stipulated, that should others be deemed advisable by the respective parties to these presents, they may be effected from time to time, as may be agreed רעיון on the terms aforesaid.    (6) It is further agreed by the party of the second part, that on failure to negotiate or sell said bonds within twelve months in sufficient sums for the completion of the road, that they will, after ninety days notice by the party of the first part, return to them the said stock and bonds, as agreed in section 5 of this agreement."

According to the first clause in said agreement, the plaintiff, on the 3d day of January, 1893, did issue to the said National Land Improvement and Manufacturing Company $50,000 of its capital stock, by delivering 500 shares thereof

at $100 per share. According to the fifth clause of said agreement, the plaintiff did make drafts, at ninety days, upon the National Land Improvement and Manufacturing Company, as follows: March 1, 1893, for $3,000; March 2, 1893, for $1,438.17; March 15, 1893, for $1,687.82; April 4, 1893, for $2,000, and April 15, 1893, for $875.70, aggregating $9,001.69, all of which were accepted, but none ever paid. Not a dollar of the proposed bonds were ever prepared or sold; nor was there even the slightest compliance by this National Land Improvement and Manufacturing Company with the agreement, except the acceptance of drafts, which it never paid.

On the 15th of May, 1893, the National Land Improvement and Manufacturing Company carried 200 shares of the capital stock of the plaintiff corporation, represented by scrip Nos. 13 and 17, each for 100 shares of the same, to the defendant, the Bank of Charleston, National Banking Association, and offered them as collateral to secure its note for $8,000. The offer was accepted, the note discounted, the 200 shares assigned as security. On the same day the note was discounted, one John C. Mallonee, as its general manager, checked out every dollar that was realized by the loan in payment of the paper of the said National Land Improvement and Manufacturing Company due to said bank, except about $2,500, which was applied to two obligations to said bank, in which the National &c. Company had no concern whatever. Soon afterwards, this National &c. Company made an assignment of its whole property for the benefit of its creditors, being wholly insolvent. But before its failure, Wm. H. Mauldin, as president of the plaintiff, made demand upon John C. Mallonee, as general manager for said National &c. Company, for a surrender of the 500 shares of the capital stock of said plaintiff corporation, as provided for in clause 6 of agreement. While Mallonee did not refuse to do so, he certainly did not so surrender. The plaintiff corporation, hearing of the offer and intention of the defendant bank to sell the 200 shares of its stock

pledged to it by the National &c. Company, commenced this action against defendant bank for the recovery of said 200 shares of stock, reciting the foregoing facts as the basis for such relief. The answer of defendant bank controverted this right, alleging that it held such 200 shares of stock under the assignment of one of its customers, National &c. Company, without any notice of any claim thereto or lien thereon by the plaintiff railroad company, and, therefore, as an innocent holder without notice, for full value. All issues of law and fact were referred to G. H. Sass, Esq., as master, who heard the testimony offered by both sides. In his report to the Court, he found all the facts and law against the plaintiff, and recommended that the complaint be dismissed, but that defendant was entitled to a judgment against the plaintiff by which the plaintiff would be ordered to issue 200 shares of its capital stock to the defendant bank, upon the defendant's surrender of the 200 shares pledged to the bank by the National Land Improvement &c. Company. The plaintiff now appeals to this Court. Let the report of the master, the Circuit Judge's decree, and the exceptions thereto appear in the report of the case. We will now consider these exceptions.

So far as the first exception is concerned, it is unquestionably true that the proceeds of the $8,000 note, when discounted for the National Land Improvement and Manufacturing Company by the defendant bank, were not all applied to the notes of the former with the latter, for such proceeds were applied to the Steinmeyer Lumber Company note for $447.34, and to the note of Mallonee & Co. for $2,000, and the testimony in the case fails to disclose any connection of the National Land Improvement and Manufacturing Company with either one of these notes. This was an erroneous finding of fact both by the master and the Circuit Judge, but the materiality of this error as to a fact may or may not be important.

The tenth exception is well taken. When the master

9—48

recommended, and the Circuit Judge decreed, that the plaintiff should issue to the defendant 200 shares of the capital stock of the former, they each went outside of the issues necessarily involved in the action; they, in fact, granted an affirmative relief to which the plaintiff had a right to object; for, as was well observed in the argument of the appellant, the plaintiff may possess some good defense against such issue which, under the pleadings, it was not invited to make.

The fourth exception is not well taken. The legislature of this State, in its charter granted to the National Land Improvement and Manufacturing Company, expressly conferred the power upon such company to hold stock in other corporations. 20 Statutes at Large, 829, sec. 7.

The remaining exceptions we will consider as a whole, for really here is the turning point in this action. Is the defendant bank entitled to the defense of an innocent purchase for full value without notice? Shares of the capital stock of a corporation are non-negotiable securities, and the usual incident to such non negotiable securities is, that all subsequent holders are required to take them, with all the equities subsisting in favor of the maker against the first holder; but commerce and the widely diversified channels of the business of corporations in this country, as well as in many others, have caused courts to recognize some salutary rule by which this sternness of the law has been greatly mitigated. This doctrine of equity and good conscience of an innocent holder for value without notice is a good illustration. The cases in our own State of *State Bank* v. *Cox & Co.*, 11 Rich. Eq., 344; *Fraser* v. *City Council*, 11 S. C., 486, are directly in point here. My difficulty has not arisen from any opposition to this beneficent rule of equity. At one time I had determined that the equities of all parties here would be harmonized by a denial to the defendant bank of its right to hold these 200 shares of the capital stock of the plaintiff,

so far as the Steinmeyer Lumber Company note for $447.34
and so far as the Mallonee & Co. note for $2,000 were con-
cerned, but allow the defendant's right to hold said shares
to protect the balance of the $8,000 for which these 200
shares were pledged, upon the ground that the Steinmeyer
Lumber Company note and the Mallonee & Co. note were
no part of the National Land Improvement and Manufac-
turing Company's obligations, as established by the proofs
in this case, and that, therefore, to that extent, the bank
had failed to show that it was an innocent holder for full
value without notice; but subsequent reflection has tended
to convince me that it might be that this would not be
measuring to the plaintiff the full protection of the law.
It is admitted that the plaintiff has not received as much
as a farthing for these 200 shares of its capital stock, but
it deliberately issued the same to the first holder, signed
and sealed, and thereby put it in the power of the first
holder to hold themselves out to the world as the true
owners thereof; and this view seemed at first to be con-
trolling in making the plaintiff liable to have its equity on
the stock postponed to that of the bank, for it is nowhere
contended that actual notice of these equities of the plain-
tiff reached the defendant bank.   But, unfortunately for
the bank, there is another principle of law which the plain-
tiff claims, and that is, constructive notice; that it being
developed by the scrip itself that it purported to evidence
shares in the capital stock of a company incorporated un-
der an act of the General Assembly of this State, it became
the duty of the bank to look to this source of power with
a view of knowing what powers, limitations, and restric-
tions were impressed upon the plaintiff railroad company
by such act in its issue of stock, as well as the liability of
the holders of the same.   Herein I think the distinction
exists between the present and many other cases.   In most
cases no mention is made, in the act of government creating
the same, as to the lien of the corporation itself upon the
shares issued to stockholders to secure the subscription.

Usually questions are raised of an entirely different kind
as to the rights of holders of stock.    But in the case at bar
it arises as to the payment of the subscription for the stock,
and the matter is expressly provided for in the act of the
General Assembly of this State.    *Section 9 of the act to
charter the Hampton and Branchville Railroad and Lum-
ber Company*, *20 Stat. at Large*, *1171.*    Section 9. * * *
"Any purchaser of said stock shall be subject to the same
rules and regulations as the original owner, and no sales of
the original owner of the stock or his assigns shall relieve
the original owner from his obligations to the company to
pay the whole of his subscription."    As before remarked,
this act is made a public act, and this being so, this pro-
vision became incorporated by law in the contract evidenced
by the issue of scrip as much so as if especially set out in the
same.    The bank was bound with notice of these provisions,
and this being so, the defense that it is an innocent holder
for value without notice cannot be sustained.    It follows,
therefore, that the judgment of the Circuit Court was erro-
neous in not giving to the plaintiff the judgment prayed for.

It is the judgment of this Court, that the judgment of
the Circuit Court be reversed, and that the cause be re-
manded to the Circuit Court, with directions to formulate
a decree therein affording the plaintiff the relief prayed for
in the complaint.

MR. CHIEF JUSTICE McIVER, *dissenting.*    I dissent, but
will not delay the filing of this opinion by taking the time
necessary to write out my views.

MR. JUSTICE GARY.    The plaintiff and the National Land
Improvement and Manufacturing Company, of Charleston,
S. C., entered into an agreement in January, 1893, whereby
the plaintiff agreed to transfer $50,000 of its stock to said
National Land Improvement and Manufacturing Company,
and to deliver to it for sale certain first mortgage bonds on
plaintiff's road.    The said National Land Improvement and

Manufacturing Company agreed in consideration thereof to negotiate and dispose of said bonds to the best advantage, and from the proceeds of sale to build and equip a part of said road, also to accept and pay drafts from time to time, to an amount not to exceed $25,000, for material, labor, &c. These advances were to be repaid from the sales of the bonds, which were to be held as collateral security for said advances. The National Land Improvement and Manufacturing Company also agreed that on failure to negotiate or sell said bonds in twelve months, in sufficient sums for the completion of the road, the bonds and stock should be returned to plaintiff after ninety days notice. 500 shares of the par value of $100 each were delivered to the National Land Improvement and Manufacturing Company under said agreement. Drafts were made and accepted but were not paid. The bonds were not sold, and demand was made for a return of the stock.

On the 15th of May, 1893, the defendant discounted, for the National Land Improvement and Manufacturing Company, a note made by said National Land Improvement and Manufacturing Company, dated 13th May, 1893, payable thirty days after date to J. H. Steinmeyer or order, for the sum of $8,000, with interest after maturity at the rate of eight per cent. per annum. The note was executed by J. H. Steinmeyer, as president, and by J. N. Mallonee, as secretary and treasurer of the National Land Improvement and Manufacturing Company, and was endorsed by J. H. Steinmeyer. The note was secured by two scripts, Nos. 13 and 17, for 100 shares each of the stock of said railroad company, which were delivered to the defendant when the note was discounted. The certificates of stock are sealed with the company's seal, signed by Wm. H. Mauldin, president and treasurer, and each certifies that the National Land Improvement and Manufacturing Company is entitled to 100 shares in the capital stock of the Hampton and Branchville Railroad and Lumber Company. The certificates are both endorsed by the company. The proceeds of

the discount were placed to the credit of the National Land Improvement and Manufacturing Company upon the books of the defendant, and were checked against at once. The amount placed to the credit of the National Land Improvement and Manufacturing Company, with about $1,900 of exchange sold, went to pay checks of the National Land Improvement and Manufacturing Company for $1,717.62, notes of said company for $5,812.87, a note of Steinmeyer Lumber Company for $447.34, and a note of Mallonee & Co. for $2,000, all of which notes so taken up were held by the defendant. The National Land Improvement and Manufacturing Company is insolvent, and is now in the hands of a receiver.

The Circuit Judge held that the defendant was an "innocent *bona fide* holder for value without notice," of the said stock, and ordered that the plaintiff do transfer upon its books to the said defendant the said 200 shares of stock, and that the complaint be dismissed.

The plaintiff appeals upon several exceptions, which, however, will not be considered separately, as they raise practically but the single question, whether the defendant was an "innocent *bona fide* holder for value without notice."

Certificates of stock are not negotiable. *Maybin* v. *Kirby*, 4 Rich. Eq., 105; *Hammond* v. *Hastings*, 134 U. S., 401; 10 S. C. R., 727; *Union Bank* v. *Laird*, 2 Wheat., 390.

Although they are not negotiable, a *bona fide* vendee for valuable consideration without notice will be protected. *State Bank* v. *Cox & Co.*, 11 Rich. Eq., 344; *Fraser & Dill* v. *Charleston*, 11 S. C., 486. We do not question the principles announced in these cases, but they are not applicable to this case.

The act chartering the plaintiff (20 Statutes, 1169,) is a public act, and, therefore, all persons are chargeable with notice of its provisions. 23 Am. & Eng. Enc., 696; *Hammond* v. *Hastings*, 134 U. S., 401. Section 8 of said act provides: "That the stock of said company may be transferred in such manner and form as may be directed by the

by-laws of said company," &c. It seems that a man of ordinary prudence, having notice of such provision, would have made inquiry as to the manner and form in which the by-laws directed that transfers of stock should be made. Section 9 of said act provides: "No subscription to capital stock of this company shall be valid unless the sum of $10 per share be paid thereon at the time of subscribing; and that if any stockholder shall fail to pay the instalment required of him, on his share or shares, by the president and the majority of the stockholders, within one month after the call for same, it shall be lawful for said president and directors to sell at public auction, and convey to the purchaser, the share or shares of said stockholder so failing or refusing, giving fifteen days notice of time and place of sale. Any purchaser of said stock shall be subject to the same rules and regulations as the original owner, and no sales by the original owner of the stock or his assigns shall relieve the original owner from his obligations to the company to pay the whole of his subscription." If the defendant, having notice of these provisions, had made inquiry, it would also have had notice that the National Land Improvement and Manufacturing Company did not have the right to make the transfer of the certificates of stock as aforesaid. As there certainly was enough to have put the defendant on inquiry, it is chargeable with notice of such facts, as the inquiry, if pursued with due diligence, would have disclosed. *Black* v. *Childs*, 14 S. C., 312; *Aultman* v. *Utsey*, 34 S. C., 561. The defendant is, therefore, not a *bona fide* holder without notice.

For these reasons, I concur in the opinion of Mr. Justice Pope.